IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

TAMMY FRYE,

            Plaintiff,

v.                                        CIVIL ACTION NO. 3:10-0107

METROPOLITAN LIFE INSURANCE
COMPANY; TRI-STATE FOOD SYSTEMS,
INC.; DOES 1 THROUGH 10, inclusive,

            Defendants.

**ORDER**

      Pending is the plaintiff Tammy Frye's ("Plaintiff") Motion for Payment of Attorney Fees and Expenses. [Doc. 50] The defendants Metropolitan Life Insurance Company ("MetLife") and Tri-State Food Systems, Inc. ("Tri-State") object to the motion.

      For the following reasons, the Court **GRANTS** the motion in part.

**I.    Background**

      On December 20, 2010, this Court issued a Memorandum Opinion and Order in this matter, which: (1) granted Plaintiff's motion for summary judgment as to her claim for short-term disability ("STD") benefits; (2) granted MetLife's motion for summary judgment as to Plaintiff's claim for long-term disability ("LTD") benefits to the extent that the motion sought dismissal pending exhaustion of Plaintiff's LTD claims; (3) granted both Tri-State and MetLife's motion for summary judgment as to civil penalties requested by Plaintiff because of the handling of her underlying benefits claims; (4) determined that Plaintiff was entitled to reasonable attorneys' fees; and (5) ordered that Plaintiff's claim be remanded to MetLife for a full and fair determination of LTD

benefit eligibility.

In accordance with the Court's order, Plaintiff's counsel, Richard Weston, filed a motion on January 3, 2011 detailing his fees and expenses in this matter. He seeks a total fee of $23,766.36. This number is based upon a $250 per hour billing rate with a total of 93.4 hours expended, plus $416.36 in general litigation costs. The defendants have responded with detailed objections.

## II.  Discussion

Under 29 U.S.C. § 1132(g), the Court is generally permitted to award reasonable fees to the prevailing party in an ERISA action. *Martin v. Blue Cross & Blue Shield of Va., Inc.*, 115 F.3d 1201, 1210 (4th Cir. 1997). In other contexts, the Supreme Court has noted that "[a] plaintiff 'prevails' when *actual relief on the merits* of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992) (discussing 42 U.S.C. § 1988) (emphasis added). Here, the Court finds that Plaintiff is a prevailing party to the extent that MetLife's decision as to STD benefits was reversed on the merits, and because the Court determined that Plaintiff's claim for LTD benefits should be remanded to ensure a full and fair determination.

In calculating reasonable attorneys' fees in ERISA cases, courts employ the "lodestar" approach. *See generally Johannssen v. Dist. No. 1–Pac. Coast Dist.*, 292 F.3d 159, 180-81 (4th Cir. 2002). The lodestar amount is determined by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). Twelve factors must be considered by the court in making this determination:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by

>the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*EEOC v. Serv. News Co.*, 898 F.2d 958, 965 (4th Cir. 1990); *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978) (adopting the factors established in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)).  The defendants primarily contend that Mr. Weston's request should be reduced based on the first, fifth, eighth, and twelfth factors under the lodestar test.[1]  Where appropriate, the Court raises other applicable factors in its analysis below.

### A. Reasonable Rate

Mr. Weston asks that the Court set his rate in this case at $250.00 per hour.  When determining a reasonable rate for an attorney's services, the court must look to the prevailing rates in the local community.  *See Rum Creek Coal Sales v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994).  Of the twelve *Johnson* factors, four are

>particularly relevant to the court's determination of reasonable hourly rates: the customary fee for like work [(the fifth factor)]; the experience, reputation and ability of the attorney[] [(the ninth factor)]; attorneys' fees awards in similar cases [(the twelfth factor)]; and the amount in controversy and the results obtained [(the eighth factor)].

---

[1] To be sure, the defendants challenge some of the other factors in a footnote, but only give a cursory assessment of them.  For the most part, the other factors mentioned by the defendants do not counsel against an award of fees, but the Court nonetheless briefly discusses them.  First, contrary to MetLife's argument, the second factor is relevant in this case.  The issues presented in the cross-motions for summary judgment were very detailed and complex.  There was little case law in the Fourth Circuit for many of the issues raised, and the parties submitted extensive supportive briefing for the Court's consideration.  Second, under the fourth factor, Mr.Weston has represented that this case prevented him from accepting other billable work, and this Court has no reason to doubt that assertion.  Finally, while the sixth, seventh, and eleventh factors are somewhat neutral, the Court notes that the fee Mr. Weston charged Plaintiff was contingent in this case.  He has worked with Plaintiff throughout her disability proceedings before MetLife, and represents that he will not be paid for much of that work.

*Wolfe v. Green*, No. 2:08-01023, 2010 WL 3809857, at *5 (S.D. W. Va. Sept. 24, 2010). The Court addresses the first three of these factors in determining an applicable reasonable rate. It considers the eighth factor in Part II.D of this Order.

With regard to the fifth factor, the court must determine the customary fee for similar work in the community. *Id.* "[I]t is the fee applicant's burden to 'produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award.'" *Id.* (quoting *Westmoreland Coal Co. v. Cox*, 602 F.3d 276, 289 (4th Cir. 2010)) (further quotation omitted). However, courts may generally look first at the rate the fee applicant charges clients. *See Marks Constr. Co. v. Huntington Nat'l Bank*, No. 1:05-cv-73, 2010 U.S. Dist. LEXIS 89186, at *31 ("This determination is 'fact-intensive and best guided by what attorneys earn from paying clients for similar services in similar circumstances.'" (quoting *Rum Creek*, 31 F.3d at 175)).

Here, Mr. Weston has submitted an affidavit stating that his civil practice consists of almost exclusively contingent fee or flat fee based work. *See* Pl.'s Mem. Supp. Mot. Att'y Fees Ex. 1 at 2, No. 55. He states that, in his limited hourly fee based work, he has frequently charged $200-250 per hour, depending on the case. *Id.* While he does not provide an example of fees he has earned in an ERISA case, he points to the fact that he is currently earning $250 per hour defending a client in an adversary bankruptcy proceeding in the Northern District of West Virginia. *Id.* Ex. 1, at 3.

The court may also, in appropriate circumstances, consider affidavits of other local lawyers familiar with the skills of the fee applicant. *See Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 245 (4th Cir. 2009). To that end, Mr. Weston provides affidavits from John Proctor and D. Adrian Hoosier II, two local West Virginia attorneys, who believe that the rate Mr. Weston requests is reasonable and in accordance with the prevailing market rate in this area given his level of

experience and skill. *See* Pl.'s Mem. Supp. Mot. Att'y Fees Exs. 2 and 3, No. 55. Mr. Proctor has thirteen years of experience, and Mr. Hoosier has six. *Id.* Ex. 2 at 1; Ex. 3 at 1. MetLife contests Mr. Weston's exhibits, contending that he has submitted no evidence of the rate charged by other West Virginia attorneys with similar experience levels.

Mr. Weston is an attorney with over six years of experience. *Id.* Ex. 1, at 1. He obtained a Bachelor of Science in Economics from West Virginia University in 2000, and a Juris Doctorate from West Virginia University College of Law in 2004, where he was an editor for the law review. *Id.* He has managed his own private practice for four years, and since that time, has been counsel of record in over fifty cases. *Id.* Ex. 1, at 1-2. However, Mr. Weston points out that he has previously litigated only one prior ERISA benefit denial claim. *Id.* Ex. 1, at 2.

Furthermore, as to the twelfth factor, neither party has offered compelling authority that would either support or substantially undermine the fee that Mr. Weston has requested in this case. MetLife has pointed to *Echostar Satellite, LLC v. Rollins*, No. 5:07-cv-00096, 2008 U.S. Dist LEXIS 8173, at *16-17 (S.D. W. Va. Feb. 4, 2008) in arguing that a fee of only $200 per hour is reasonable in this case. MetLife claims that, in *Echostar*, the court found $200 per hour to be a reasonable rate for a prevailing attorney with approximately eight years of experience. *Id.* To be sure, *Echostar* was a digital piracy suit brought under various federal telecommunications and intellectual property protection acts; it was not an ERISA case. *Id.* at *1-2. The Court nonetheless considers its holding in setting a reasonable rate, but has also identified other cases supporting a higher rate. *See infra* n. 2.

On balance, the Court finds that the rate Mr. Weston requests exceeds the prevailing market rate. The affidavits he has provided, while helpful in confirming his professional reputation, do not

support an award of $250 per hour for someone with his experience level. As noted, Mr. Proctor has thirteen years of experience, and appears to no longer handle ERISA cases. Pl.'s Mem. Supp. Mot. Att'y Fees Ex. 2 at 1, No. 55. And although Mr. Hoosier notes that he typically charges $300 per hour for cases that require extensive and continuing legal knowledge, he does not suggest that he has ever handled an ERISA case. *Id.* Ex. 3, at 1-2. The other supplemental materials Mr. Weston has offered are of only moderate assistance in the Court's inquiry. For example, the original materials attached to his Motion for Payment of Attorney Fees and Expenses include affidavits from attorneys in jurisdictions outside of West Virginia. Therefore, the Court finds that a reduction is warranted in order to account for Mr. Weston's general experience level, and his familiarity with ERISA disputes.

On the other hand, the reduction does not lower the rate to the level the defendants seek—$200 per hour. There are two reasons for this. First, Mr. Weston has promising credentials, and has exhibited his skill as a successful advocate for his client in this case. Second, as no doubt illustrated by the lack of case-specific fee affidavits provided, ERISA disputes are not exceedingly attractive for private attorneys in this region because of their time consuming nature and the concomitant low probability of recovery for beneficiaries seeking reversal of adverse decisions. Yet despite their complexities, competent legal representation is exceedingly crucial for the protection of ERISA benefit plan participants and beneficiaries, counseling in favor of a higher award under the tenth factor. Therefore, bearing these important considerations in mind, the Court believes a reasonable rate to be $225 per hour.[2] Such a rate takes account of the experience level differences

---

[2] This rate is consistent with this Court's previous awards in cases of similar procedural and substantive complexities for attorneys with experience levels commensurate with Mr. Weston's. *See, e.g.*, *Short v. Wells Fargo Bank Minn., N.A.*, No: 3:04-1096, 2006 U.S. Dist.

between Mr. Weston and the attorney affiants he has secured, as well as the other factors already discussed at length.

**B.    Time Spent**

For the most part, the defendants do not challenge the itemized time sheets Mr. Weston submits to this Court. They further do not argue that the work descriptions provided by Mr. Weston are vague or ambiguous. They do, however, seek a specific 11.3 hour reduction due to Mr. Weston's work on legal issues specific to Plaintiff's claim for civil penalties against Tri-State. In the Court's original Memorandum Opinion and Order, it determined that Tri-State and MetLife should share the attorney's fee award equally. Tri-State is the plan administrator, and MetLife is the claims administrator under the applicable policy. Both parties shared responsibilities in processing Plaintiff's claim for STD benefits, and their joint misconduct formed the basis of the original attorneys' fee award. Because of the overlapping legal and factual matters at issue in this case, the Court finds that it would be difficult to separate the award on a claim-by-claim basis. Instead, as discussed below, the Court can, in some instances, make a uniform reduction to reflect Plaintiff's failure to succeed on the merits of the civil penalty claims. This action addresses MetLife's objection, and preserves the Court's reasoning that both parties were equally culpable in the claims determination process. The Court's approach is consistent with that of other courts in this district and elsewhere. *See, e.g.*, *Short*, 2006 U.S. Dist. LEXIS 37988, at *19-20 (dividing fees equally among defendants where the claims involved arose out of a common core of facts and where the defendants were equally culpable); *Thompson v. United States HUD*, No. MGJ-95-309, 2002 U.S.

---

LEXIS 37988, at *19-20 (S.D. W. Va. June 8, 2006) (awarding $225 per hour to an attorney with roughly eight years of experience in a truth-in-lending action).

Dist. LEXIS 23875, at *54-56 (D. Md. Nov. 21, 2002) (suggesting that it is both equitable and practical to divide attorneys' fees awards between multiple defendants in terms of relative levels of culpability and other objective factors).

### C. The Lodestar Figure

For the aforementioned reasons, the Court determines that Mr. Weston is entitled to reasonable attorneys' fees. The lodestar figure is calculated as follows:

| Attorney | Hours Requested | Recoverable Hours | Rate | Total |
| --- | --- | --- | --- | --- |
| Richard Weston | 93.4 | 93.4 | $225.00 | $21,015.00 |

### D. Degree of Success

MetLife argues that the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be excessive where the "plaintiff has achieved only partial or limited success." *See Brodziak v. Runyon*, 145 F.3d 194, 196-97 (4th Cir. 1998) (citation omitted). After determining the lodestar figure, the court may reduce an award to account for limited success. *See Robinson*, 560 F.3d at 244. To do as much, the court must first subtract fees incurred for unsuccessful, unrelated claims, and then award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff. *Id.* (quoting *Grissom v. Mills Corp.*, 549 F.3d 313, 321 (4th Cir. 2008) (internal quotation marks and citation omitted)); *Lilienthal v. City of Suffolk*, 322 F. Supp. 2d 667, 675 (E.D. Va. 2004) (noting that the "degree of success obtained by the plaintiff is the 'most critical factor' in determining the reasonableness of a fee award") (citation omitted); *Signature Flight Support Corp. v. Landow Aviation*, No: 1:08-cv-955, 2010 U.S. Dist. LEXIS 77064, at *36-37 (E.D. Va. July 30, 2010) (citing *Hensley*, 461 U.S. at 436).

In determining the appropriate reduction for limited success, courts must consider at the threshold "whether the claims on which the plaintiff prevailed are related to those on which he did not." *Brodziak*, 145 F.3d at 197. Time spent on unsuccessful claims is related to time spent on successful claims for purposes of determining a reasonable fee if the issues litigated involve a "common core of facts" or related legal theories. *Hensley*, 461 U.S. at 435. In these instances, much of the time expended will likely be devoted to the litigation as a whole, making it difficult to divide the hours on a claim-by-claim basis. *Brodziak*, 145 F.3d at 197. The court should therefore not view the lawsuit as a series of discrete claims where the issues litigated are related, but should instead focus on the significance of the overall relief obtained in relation to the hours the attorney reasonably expended. *See Signature Flight Support Corp.*, 2010 U.S. Dist. LEXIS 77064, at *35.

At the outset, the Court believes that all of Plaintiff's claims were sufficiently related for the purpose of an attorney's fee award. Plaintiff's requests all stem from MetLife and Tri-State's handling of her underlying claims for STD and LTD benefits. She would not have requested civil penalties if the defendants had acted properly in adjudicating her claim. Therefore, because the claims "'arise out of a common core of facts, and involve related legal theories,'" the Court may consider them together, but must "reduce an award to account for the plaintiff's limited success."[3] *Cross v. Fleet Reserve Ass'n Pension Plan*, No. WDQ-05-0001, 2010 U.S. Dist. LEXIS 95988, at *28-29 (D. Md. Sept. 13, 2010) (citing *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489

---

[3] While MetLife acknowledges the Supreme Court's recent pronouncement in *Hardt v. Reliance Std. Life Ins. Co.*, 130 S. Ct. 2149, 2158-59 (2010) that ERISA claimants may obtain an award of fees upon a showing of "some success" on the merits, it contends that courts in this circuit continue to focus on the relative *degree* of success in setting the amount of an attorney's fee award. *See Marks Constr. Co. v. Huntington Nat'l Bank*, No. 1:05-cv-73, 2010 U.S. Dist. LEXIS 89186, at *20-24 (N.D. W. Va. Aug. 27, 2010). The Court agrees.

U.S. 782, 789-90 (1989)).  Courts may also, in conducting this analysis, give consideration to the amount of damages awarded as compared to the amount sought.  *Cross*, 2010 U.S. Dist. LEXIS 95988, at *29.  Considering these facts, MetLife argues that Plaintiff only partially prevailed as she lost three of her four claims—namely, the LTD claim, and her request for civil penalties against both MetLife and Tri-State.  The Court agrees, but only to an extent.

This Court denied Plaintiff's claims for civil penalties against both MetLife and Tri-State, but granted her full request for STD benefits, and determined that her claim for LTD benefits should be remanded for a full and fair determination.  Contrary to MetLife's contention, these awards were not "trivial" in the overall scheme of Plaintiff's complaint.  The STD determination was made on the merits, and was the subject of MetLife's underlying contested decision.  Moreover, the determination by this Court that the LTD claim should be remanded is not simply a "procedural victory" as defined by the Supreme Court in *Hardt*.  To the contrary, the Court in *Hardt* reasoned that a district court's remand of a benefits determination for a full and fair review may demonstrate some success on the merits.  130 S. Ct. at 2158-59.

However, the LTD claim has not yet been litigated, so the Court finds it difficult to place a specific value on it.  Further, while the precise amount of STD benefits will likely not constitute most of the total damages Plaintiff initially requested in her motion for summary judgment, such an award was the primary type of relief she sought.  The Court thus considers Plaintiff's victory a significant one.  Nevertheless, Plaintiff did not prevail on her civil penalty claims against Tri-State and MetLife—two claims that provided the potential for substantial monetary recovery.  For that reason, the Court believes that some reduction is appropriate.

MetLife argues that a two-thirds reduction is warranted to reflect the fact that much of Mr.

Weston's time was spent working on the unsuccessful legal arguments as to civil penalties and on claims that were specific to Tri-State. As noted, where claims involve a common core of law and fact—as they do here—it is difficult to divide the hours expended on a claim-by-claim basis. *Brodziak*, 145 F.3d at 197. It is also difficult, moreover, to accurately measure the prevailing party's degree of success where multiple related claims are advanced.

In this case, the Court believes that a fifteen percent reduction is appropriate to reflect the quality of Plaintiff's victory as a whole. Plaintiff sought STD benefits and the Court awarded her those benefits. The Court further ordered that MetLife fairly address her LTD claim on remand. Plaintiff requested the remedy of civil penalties in this case only because MetLife and Tri-State acted improperly in adjudicating her application. While those claims were not insignificant, they did not constitute the thrust of Plaintiff's lawsuit.[4] Further, Plaintiff lost those arguments, not on the merits, but because the mechanical application of the applicable statute of limitations barred her claim against Tri-State and because MetLife did not qualify as a "plan administrator" for purposes of ERISA. While it is true that courts should compare the amount of damages sought to the amount awarded, *see Mercer v. Duke Univ.*, 401 F.3d 199, 204 (4th Cir. 2005), it need not apply a precise mathematical approach, ignoring the operative reality of the litigation. *Hensley*, 461 U.S. at 435. The Court believes that a fifteen percent reduction accounts for the success Plaintiff obtained, and recognizes the fact that the civil penalty claims arose as a byproduct of the factual and legal foundations of the STD and LTD claims. Therefore, the Court, in reducing the total award, "applies

---

[4] In her first memorandum in support of her cross-motion for summary judgment, for example, civil penalty arguments constituted only five of twenty substantive pages. While later responsive briefing covered the issue in more detail, this was only because it was heavily contested by the defendants.

'a rough sense of equity' to its knowledge of the litigation at issue." *Emp'rs Council on Flexible Comp. v. Feltman*, No. 1:08-cv-371, 2010 U.S. Dist. LEXIS 2744, at *41 (E.D. Va. Jan. 13, 2010) (reducing the lodestar amount by 25% where plaintiff obtained $20,000 out of a possible $100,000 in statutory damages, did not present other substantive claims to the court, but achieved limited injunctive relief (citing *Quantum Sys. Integrators, Inc. v. Sprint Nextel Corp.*, No. 1:07-cv-491, 2009 U.S. Dist. LEXIS 98742 (E.D. Va. Oct. 16, 2009))) (internal quotation marks omitted).

The following chart details the fee award after applying the appropriate reductions to the lodestar amount:

| Attorney | Hours Requested | Recoverable Hours | Rate | Total |
| --- | --- | --- | --- | --- |
| Richard Weston | 93.4 | 93.4 | $225.00 | $21,015.00 |
| 15% Reduction | | | | ($3,152.25) |
| Total | | | | **$17,862.75** |

Finally, under 29 U.S.C. § 1132(g)(1) the court may, in its discretion, allow "reasonable . . . costs of action to either party." *See Porter v. Elk Remodeling, Inc.*, No. 1:09-cv-446, 2010 U.S. Dist. LEXIS 89037, at *30 (E.D. Va. Aug. 27, 2010). Mr. Weston submits an uncontested request for $416.36 in litigation-related expenses. The Court deems this request reasonable, and therefore awards a total of $18,279.11 in attorneys' fees and expenses.

**III.   Conclusion**

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Payment of Attorney Fees and Expenses. [Doc.50] The Court further **ORDERS** that the defendants pay $18,279.11 in attorneys' fees and expenses in a manner consistent with this Order.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

        ENTER:      February 4, 2011

        ROBERT C. CHAMBERS
        UNITED STATES DISTRICT JUDGE